HICKS (NEW YORK DRY DOCK v.). See Case No. 10,204.

HICKS (POTTER v.). See Case No. 11,328.

HICKS (QUICKSILVER MINING CO. v.). See Case No. 11,508.

HICKS (RICHARDSON v.). See Case No. 11,783.

## Case No. 6,462.

### HICKS v. SHAVER.

[3 App. Com'r Pat. 439.]

Circuit Court, District of Columbia. March 12, 1861.

PATENTS—INTERFERENCE—DECISION—EFFECT OF.

[1. The failure of the patent office to declare an interference when a patentee is seeking a reissue, pending an application by another, is not a decision that the claims are for different inventions.]

[2. A perfected invention, if diligently pursued, will date back to the time of the first conception, as against a later conception of another, first perfected.]

[Appeal by James M. Hicks from a decision of the commissioner of patents in an interference case, in relation to curved back erasers and burnishers, awarding priority of invention to A. G. Shaver.]

DUNLOP, Chief Judge. On this appeal, two questions arise, and have been discussed: 1st, whether the inventions claimed, are the same; and 2nd, if they be the same, who was the first inventor? The claim of Shaver, in his original patent of March 8, 1859, was in these words: "The curved blade eraser, with the circular edge, pencil sharpener, &c." He did not claim the convex back; but in his specification or description, which precedes his claim, he uses these words: "The convex or bottom part of the blade is smoothed off, a little rounding, to be used as a polisher, or rubber down of the inequalities of the paper, after erasing, &c." In the reissued patent of August 30, 1859, his claim is: 1st. For the curved blade eraser, as above specified, forming on one side a convex surface, substantially as and for the purposes set forth. Hicks' claim in his application of July 19, 1860, is in these words: "The convex back eraser herein described, operating in the manner and substantially as set forth."

The claims of Shaver, in his reissue, and Hicks, in his application, appear to be identical, as to the convex back, and the counsel for Hicks admits them to be literally so, but insists, on various grounds, that there is a real and patentable difference. 1st. He alleges that the office has so decided, in not declaring an interference in August, 1859, when Shaver was seeking his reissue. Hicks then having substantially as now the same application then pending. There can be no doubt that Shaver, if the original inventor, was entitled to his reissue in August, 1859. He had a right to enlarge the original claim, because his original specification set forth the convexed back, and if he omitted it in his original, by inadvertence, and without fraud, the office, by the record, had the means, and were bound to correct the error by reissue. It is true the office might in August, 1859, on the reissue, have declared the interference with Hicks, and then tried the merits of priority with him. But Hicks is not injured in having the trial now, on the present application, more especially, if he is not the original first inventor, as between himself, and Shaver, and if Shaver, as is supposed and contended, is antedated by any other prior inventor, although Shaver's reissue patent cannot now be disturbed either by the office, or me, on appeal. The courts of justice are open to Mr. Hicks, or any other citizen, in a suit by Shaver, for infringement, to contest his title to his patent, and show it to be invalid. At all events, I see nothing in the action, or rather non-action, of the office in August, 1859, to estop them now, or to prevent their declaring the present interference.

It is next argued that the greater convexity of Hicks' eraser, distinguishes it, in a patentable sense, from Shaver's; that this greater convexity serves as a guide to the hand, in using it, and makes it operate as a plane, to plane off the surface of the paper, instead of scraping it. It seems to me these are very nice distinctions, too much so to be the foundation of a patent; the guidance of either Hicks' or Shaver's eraser, and the planing or scraping or cutting the paper, to which they

are applied, depends, after all, on the skill with which they are manipulated. One would seem as easily sharpened as the other, and as easily kept in order. The counsel of Hicks, in his argument, himself admits that "mere difference in the degree of convexity given to the back of the eraser would not be patentable, unless some new principle was brought into action, or some new and distinct result attained." I conclude, therefore, the inventions are substantially the same. This being so, who was the first inventor?

Hicks does not carry his invention back further than June 19 or 20, 1857. Theodore and Prince A. Snell certainly prove that Shaver had the "conception" of a convex back eraser as early as the spring of 1857, and ordered them to make such erasers for him, and W, X, and Y were made in April, 1857. These, it appears, were not made sufficiently convex, nor according to Shaver's directions. Miss Bull afterwards saw an eraser, in Shaver's possession, more convex in both directions, longitudinally and crosswise, than X or W, but like them in other respects. Now, if Shaver had the "conception" of the convex back eraser as early as April, 1857, and was using reasonable diligence to perfect it and reduce it to practice, even if he had failed to do so till Hicks, later, conceiving the same "idea," had first perfected the "idea" by a manufactured convex eraser, Shaver, in law, would still be the first inventor. His perfected eraser, if diligently pursued, would date back to the time of the first conception. On this subject I refer to my opinion in the case of Beverly Rubber Co. v. Wing [unreported], of August 30, 1860, and to the authorities cited, and to section fifteen of the patent act of July 4, 1836 [5 Stat. 123]. In point of fact, however, Shaver first perfected his invention by a completed convex eraser, as Miss Bull testifies, as early as June 5, 1857, two weeks earlier than Hicks on the 20th of the same month. On these grounds, and those so clearly set forth by the examiner and the commissioner, I overrule all the appellant's reasons of appeal, and affirm the judgment of the commissioner.